UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SEAN J. FLOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-00454-SDN |
| | ) | |
| JAMES PORTER & | ) | |
| KEVIN LITTLEFIELD, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' motion for summary judgment. ECF No. 28. After review, the Court **GRANTS** their motion.

### FACTUAL BACKGROUND

Before setting out the facts, the Court must first address Defendants' assertion that Mr. Floyd has failed to comply with Local Rule 56 in his summary judgment briefing and, if Defendants are correct, how that failure impacts the facts the Court considers in deciding their motion. Although the Court construes Mr. Floyd's pro se filings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), that leniency does not excuse him from complying with local procedural rules, *see Ruiz Rivera v. Riley*, 209 F.3d 24, 28 n.2 (1st Cir. 2000), *abrogated on other grounds by de Aza-Paez v. United States*, 343 F.3d 552 (1st Cir. 2003). Mr. Floyd did "admit, deny, or qualify" the opposing parties' Statement of Material Facts ("SMF"), ECF No. 29, so the Court will credit those responses to the extent they are relevant. D. Me. Loc. R. 56(c)(1); *see* ECF No. 31 ("Resp. to SMF"). However, his additional statement of material facts, ECF No. 31-1, fails to comply with the Rule's requirement to support statements with record citations. *See* D. Me. Loc. R. 56(f). The

1

Court thus disregards Mr. Floyd's additional statement of material facts, ECF No. 31-1. *See Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007) (upholding district court's decision to disregard an opposing statement of material facts that "were completely unsupported by *any* hint of a record citation").[1]

Accordingly, the undisputed facts are as follows. Pursuant to a bail form executed on August 17, 2018, for pretrial release on state felony charges, Mr. Floyd's bail conditions required participation in an electronic monitoring ("ankle monitor") program supervised by the Waldo County Sheriff's Office. SMF ¶ 1; Resp. to SMF ¶ 1. The monitoring agreement required Mr. Floyd "to keep the device adequately charged." SMF ¶ 4; Resp. to SMF ¶ 4; ECF No. 29-1 at 54–55. Mr. Floyd signed and initialed the operative paragraphs in the monitoring agreement, acknowledging the terms of his conditions. SMF ¶ 6; Resp. to SMF ¶ 6; ECF No. 29-1 at 54–55.

Around 7:00 a.m. on January 26, 2019, a Waldo County Sheriff's Office detective called Sheriff's Deputy Kevin Littlefield and told him he had received a dead battery alarm from Mr. Floyd's ankle monitor. SMF ¶ 9; Resp. to SMF ¶ 9. The detective told Deputy Littlefield that Mr. Floyd had violated the monitoring agreement by failing to keep the monitor charged. SMF ¶ 11; Resp. to SMF ¶ 11. Deputy Littlefield then contacted another Sheriff's Deputy, Kevin Porter, to accompany him to Mr. Floyd's residence to investigate the dead battery. SMF ¶ 14; Resp. to SMF ¶ 14. Upon arrival, Mr. Floyd told the deputies that he had been having trouble with the ankle monitor's charger and that he had to tape the charger cord to hold it to the body of the charger. SMF ¶¶ 12, 17; Resp. to SMF ¶¶ 17, 20. He also indicated he had previously spoken with a different Sheriff's Deputy a week

---

[1] Because the Court disregards Mr. Floyd's additional statement of material facts, it need not consider Defendants' reply to those facts, ECF No. 32. *See Kristiansen v. Town of Kittery*, No. 18-CV-00420, 2021 WL 4073273, at *4 n.3 (D. Me. Sept. 6, 2021).

earlier and communicated to him that the charger was not working. SMF ¶ 16; Resp. to SMF ¶ 28.

Mr. Floyd then connected the monitor to the charger; after thirty seconds the monitor beeped, received charge, and restored power. SMF ¶ 19; Resp. to SMF ¶ 19. Deputy Littlefield disconnected the monitor from the charger after a few minutes. SMF ¶ 21; Resp. to SMF ¶ 21. The county's tracking software then sent Deputy Littlefield a text message indicating that the monitor's dead battery alarm had been cleared, which he understood to mean the monitor had properly charged after being connected to the charger. SMF ¶ 22; Resp. to SMF ¶ 22. Several minutes later, Deputy Littlefield received an alert from the tracking software that the battery had died again, which he attributed to the monitor having been disconnected from the charger. SMF ¶ 23; Resp. to SMF ¶ 23. Deputy Littlefield then arrested Mr. Floyd for violating his conditions of release. SMF ¶ 24; Resp. to SMF ¶ 24. Deputy Porter, who had been observing the interaction, did not make the determination to arrest Mr. Floyd and had very little contact with him during the events at issue. SMF ¶¶ 34–35; Resp. to SMF ¶¶ 34–35.

## ANALYSIS

In his amended complaint, Mr. Floyd brings one claim under 42 U.S.C. § 1983 alleging that Deputies Littlefield and Porter violated his constitutional rights under the Fourth Amendment by making an unreasonable and warrantless arrest. ECF No. 8 at 6. Defendants move for summary judgment, arguing there is no dispute of material fact that Deputy Littlefield had sufficient probable cause to effectuate Mr. Floyd's arrest because Mr. Floyd had violated his conditions of release by failing to keep his ankle monitor adequately charged. ECF No. 28 at 8–10. Defendants also assert qualified immunity shields them from liability. *Id.* at 10.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is 'genuine' if the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 93 (1st Cir. 2021) (quoting *Ellis v. Fid. Mgmt. Tr. Co.*, 883 F.3d 1, 7 (1st Cir. 2018)). A fact is "'material' if it 'has the potential of affecting the outcome of the case.'" *Id.* (*quoting Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 (1st Cir. 2011)). The Court "review[s] the record in the light most favorable to the nonmoving party, and . . . draw[s] all reasonable inferences in the nonmoving party's favor." *Block Island Fishing, Inc. v. Rogers*, 844 F.3d 358, 360 (1st Cir. 2016). Because Mr. Floyd is pro se, the Court construes his filings liberally. *See Erickson*, 551 U.S. at 94.

The Fourth Amendment guarantees the right of people to be secure against "unreasonable searches and seizures." U.S. Const. amend. IV. This guarantee requires police officers to have probable cause before making an arrest. *See United States v. Ayres*, 725 F.2d 806, 809 (1st Cir. 1984). Probable cause exists where an officer possesses reasonably trustworthy information about facts and circumstances that would lead a prudent person to believe that an offense has been or is being committed by the person to be arrested. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). An arrest challenged as lacking probable cause is "deemed 'objectively reasonable' unless 'there *clearly* was no probable cause at the time the arrest was made.'" *Topp v. Wolkowski*, 994 F.2d 45, 48 (1st Cir. 1993)

4

(quoting *Floyd v. Farrell*, 765 F.2d 1, 5 (1st Cir. 1985)). Under Maine law, police officers may conduct a warrantless arrest of "[a]ny person who has committed or is committing in the officer's presence any Class D or Class E crime," 17-A M.R.S. § 15(1)(B), which includes "[a] defendant who has been granted preconviction or postconviction bail and who, in fact, violates a condition of release," 15 M.R.S. § 1092(1)(A) (defining violations of conditional release as a Class E crime).

The undisputed facts indicate probable cause existed. On the day of his arrest, Mr. Floyd was subject to a monitoring agreement as a condition of his preconviction bail that required him "to keep the device adequately charged." ECF No. 29-1 at 54–55. When the deputies arrived to his house, Mr. Floyd's ankle monitor was not adequately charged—it had been without charge long enough to trigger the county's notification system. Mr. Floyd knew the charging was required; he had signed and initialed the monitoring agreement acknowledging that obligation. Deputy Littlefield had received word from a sheriff's detective that the dead battery constituted a violation of Mr. Floyd's conditions of release. Deputy Littlefield also observed firsthand that the ankle monitor was uncharged when he arrived, and that it died again several minutes after Deputy Littlefield disconnected it from the charger. These facts were sufficient to give an objectively reasonable officer in Deputy Littlefield's position probable cause to believe Mr. Floyd had violated a condition of his release. Deputy Littlefield therefore did not violate the Fourth Amendment by conducting a warrantless arrest of Mr. Floyd. *See Atwater*, 532 U.S. at 354.[2]

---

[2] To the extent Mr. Floyd argues he had experienced previous issues with the charger, or that the incident did not constitute an actual violation of his conditions of release, those determinations fall squarely within the domain of state court proceedings for violations of conditional release. This Court's only concern is whether, at the time of arrest, Deputy Littlefield had probable cause to believe a crime had been committed. *See Thompson v. Olson*, 798 F.2d 552, 556 (1st Cir. 1986) ("[H]aving once determined that there is probable

To the extent Mr. Floyd presses his Fourth Amendment claim against Deputy Porter, such claim fails. Because "vicarious liability is inapplicable" in a federal civil rights action, a government official is "only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). The undisputed facts establish that Deputy Porter had no role in investigating the ankle monitor violation or in deciding to arrest Mr. Floyd.

Because Mr. Floyd has not established a Fourth Amendment violation by either Defendant, Deputies Littlefield and Porter are entitled to qualified immunity on this section 1983 claim. *See Topp*, 994 F.3d at 46 (finding qualified immunity where officers "violated no clearly established federal or state standards in arresting [defendant]").

## CONCLUSION

For the reasons provided, the Court **GRANTS** Defendants' motion for summary judgment. ECF No. 28. This case is **DISMISSED**.

**SO ORDERED.**

Dated this 9th day of June, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**

---

cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car.").